UNITED STATES *v.* COLONIAL COMMERCE CO., LTD., P. JOHN HANRAHAN, INC. (No. 4865) [1]

United States Court of Customs and Patent Appeals, November 30, 1956

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief Customs Section (*Alfred A. Taylor, Jr.,* trial attorney, of counsel), for the United States.

[1] C. A. D. 629.

*Barnes, Richardson & Colburn (Eugene F. Blauvelt* and *E. Thomas Honey* of counsel) for appellees.

[Oral argument October 3, 1956, by Mr. FitzGibbon and Mr. Blauvelt]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, COLE, and RICH, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Third Division, C. D. 1734, sustaining the importers' protest and holding that the instant merchandise should have been classified as unground sage, under paragraph 781 of the Tariff Act of 1930, rather than as ground sage under the same paragraph. The pertinent portion of that paragraph reads:

Par. 781. Spices and spice seeds: * * * sage, unground, 1 cent per pound; ground, 3 cents per pound; * * *.

It is stipulated that the process by which the merchandise is produced is as follows:

* * * The sage is washed, cut in a silage cutter and then placed on the drying trays. Air at 130 degrees Fahrenheit is passed through the material for three and a half hours until the moisture content is reduced to eight to nine per cent. The material is then passed through an adaptation of a threshing machine to remove the gross stalks. The residue of leaf and fine stalk is then fed into a machine consisting of a horizontal cylinder made either of wire mesh or punched steel plate with apertures one-eighth inch in diameter. In this cylinder, brushes rotate from a central axis. These are set to convey the material slowly through the cylinder, and, by brushing, the leaf particles are forced through the apertures in the cylinder while the stalks continue and fall out at the end of the cylinder. This results in much the same process as if a man took the material and rubbed it through a hand-sieve with the same apertures. The rubbed leaf falling through the apertures of the cylinder is sifted twice to remove any stalk that may have fallen endways through the apertures. The material is then bagged up for sale.

The issue here, as below, is whether the merchandise is "ground" within the meaning of paragraph 781. In making that determination, two factors may be considered; namely, the process by which the material was reduced in size, and the fineness of the particles to which it was reduced.

With respect to the legislative history of paragraph 781, the Customs Court made the following statement:

An examination of earlier tariff acts discloses that, in providing for spices, Congress used the term "ground or powdered." See paragraph 96, Tariff Act of 1883; paragraph 326, Tariff Act of 1890; paragraph 235, Tariff Act of 1894. The acts of 1890 and 1894 specifically provided for "sage" under the general heading of spices, ground or powdered. In the acts of 1897 and 1909, "sage" was provided for, without descriptive words (pars. 287 and 298, respectively). The descriptive terms "ground" and "unground" were first introduced in the act of 1913 (paragraph 235) and carried into the acts of 1922 (paragraph 779) and of 1930 (paragraph 781, *supra*). Diligent search has failed to disclose the reason for the change.

Finding no precedent directly in point in the instant case, the court relied on the decision of the Board of General Appraisers in *Frame & Co.* v. *United States*, T. D. 26374, G. A. 6045 (decided in 1905), affirmed in 143 Fed. 692, and was apparently of the opinion that the specific process by which the material was reduced in size is not important in determining whether it is "ground" in a tariff sense.

The *Frame* case involved pepper which had been decorticated by placing the pepper berries between a stone and a wire covering and removing the outer covering of the berries by friction, after which the process was continued until a further covering intermediate between the outer covering and the kernels was also removed. As the result of that process, there was produced a material consisting of pepper in a "fine powdery state." In holding that material to be ground, the court said:

> The dictionary definition of grinding is to reduce to fine particles or powder by crushing or friction * * *. We do not think it matters whether the commodity is reduced to a fine powder by a system of decortication, or by trituration, or what is more generally known as grinding. In either event, if it is *reduced to a fine condition or powder*, we think it must be considered to have been ground. (Italics supplied.)

In our opinion the *Frame* case does not hold that a finely divided powder produced in any way whatever is to be considered ground. For example, it could hardly be contended that a powder resulting from the precipitation of a substance is a "ground" material. Thus it follows that interpretation of the term "ground," being the past tense of the verb "grind," must necessarily include consideration of the process employed as well as the end result. All that needed to be decided in the *Frame* case was that the particular product there involved was "ground" and, in so holding, it does not appear that the Board of General Appraisers went any further than to decide that the word "ground" was applicable to material which had been reduced to a fine condition or powder by crushing and friction, even though those steps did not take place in a grinding mill.

We are in agreement with the holding in the *Frame* case, as above construed, since we think that, although grinding is necessarily a physical process involving the application of friction, or crushing, to the material at hand, the term is broad enough to cover a variety of processes by which materials are divided into relatively small particles. That conclusion is supported by the following dictionary definitions: Webster's New International Dictionary, Second Edition, 1950, defines "grind" as:

> To reduce to *powder* by *friction* as in a mill, or with heat. [Italics supplied.]

Funk & Wagnall's New Standard Dictionary, 1941 Edition, defines the same verb as:

To reduce to *fine particles or powder* by crushing and friction; triturate; as to grind wheat.   (Italics supplied.)

In the Century Dictionary and Cyclopedia, Revised Edition, "grind" is defined as:

To *break* and *reduce* to *fine particles* by *pounding, crushing,* or *rubbing,* as in a mill or mortar, or with the teeth.   (Italics supplied.)

It is to be noted that while two of the above definitions state that grinding involves a reduction in size "as in a mill," they are not limited to the use of a mill, but mention it only as an example.

The process by which the instant merchandise was reduced in size satisfies the dictionary definitions so far as the mechanical steps are concerned, and is generally similar to that employed in the *Frame* case, since in each instance the reduction was effected between a wire covering and another member.   Accordingly, there is nothing in the nature of the process by which the instant merchandise was produced which would preclude its classification as "ground sage;" and it remains only to be determined whether the size of the particles is such as to prevent such classification.

It is true that the definitions of grinding contemplate a reduction to small particles *or* to powder, but no definition has been cited, and we have found none, which gives actual limiting dimensions of the particles or powder included in the definition of the word "grind" or "ground."   It is obvious, however, that the term may be applied to particles of various sizes since it is common, as in the case of coffee, for example, to speak of course and fine grinding.

Under such circumstances it would appear that the question whether a material such as that here has been ground is largely a matter of opinion, and it is therefore proper to consider the views of those familiar with the spice trade.   Four witnesses were called, one on behalf of the importers and three on behalf of the Government. As noted below, there was some degree of contradiction in their testimony.

The importers' witness, John Lucas, engaged in herb drying and processing testified that sage produced by a process such as that described above in connection with the instant merchandise is known as rubbed sage.   He was of the opinion that the grinding and rubbing processes were "basically different" in that grinding produces a very fine flour or powder from the leaf and stalk whereas rubbing involves "a gentle brushing of the leaf through a comparatively large aperture."   However, as above stated, the brushing process described is a frictional or rubbing process falling within the dictionary definitions of grinding.   As to particle size, Lucas appears to think that rubbed sage is too coarse to be properly described as "ground," but he does not specify how small the particles must be in order to qualify under that term.

Testimony for the Government was given by Victor E. Figlar, Fred W. Jungbluth, and John J. McGowan, all engaged in the spice trade. The testimony of each of those witnesses was to the effect that sage may be ground to different degrees of fineness; that the fine powder described by Lucas as "ground" is a "fine" grind; and that the instant merchandise is a "coarse" grind. Jungbluth and McGowan also testified that the fineness of the grind involves merely a matter of adjustment of the apparatus employed, and that both fine powder and particles such as those of the instant merchandise may be produced in the same mill by varying the setting or employing plates having perforations of different sizes.

It also appears from the testimony of Lucas that both the fine ground sage and the so-called rubbed sage, consisting of larger particles, are used chiefly for flavoring foods, and in substantially the same manner, although the larger particles give a stronger flavor and may be more easily mixed with meat than the fine powder which "is inclined to go into wads."

It may be true, as asserted by appellees, that the testimony does not prove a commercial designation of the word "ground" which differs from the common meaning but, since the common meaning is somewhat indefinite, it is proper to consider the interpretation commonly placed upon it in the particular industry involved. In our opinion the testimony is sufficient to establish that the instant merchandise would be generally considered by those in the spice trade or industry to be "ground" sage.

For the reasons given, it is our conclusion that the merchandise was properly classified by the Collector of Customs as "ground sage," under the provisions of paragraph 781 of the Tariff Act of 1930.

The decision of the United States Customs Court must, accordingly, be *reversed*.

COLE, Judge, was present at the argument of this case, but, because of illness, did not participate in the decision.